**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION**

**LOUIS J. ALIOTA,**

        **Plaintiff,**

v.                                                                            Civil Action No.:   1:23-cv-188

**MILLCREEK TOWNSHIP SCHOOL
DISTRICT;
MEREDITH BOLLHEIMER, Individually;
CHRISTOPHER BUSKO, Individually;
JOHN DIPLACIDO, Individually;
DONNIE HOSFORD, Individually;
JANINE MCCLINTIC, Individually;
JOHN PITZER, Individually;
DONNA REESE, Individually;
KAREN MORAHAN, Individually;
GARY WINSCHEL, Individually;
LISA CAPPABIANCA, Individually;
JASON DEAN, Individually;
J. MICHAEL LINDNER, Individually;
SHIRLEY WINSCHEL, Individually;
RICK LANSBERRY, Individually;
JANIS FILBECK, Individually;
SALLIE NEWSHAM, Individually; and
KIM LUPICHUK, Individually,**

        **Defendants.**

## **COMPLAINT**

COMES NOW Louis J. Aliota ("Mr. Aliota"), Plaintiff in the above-styled action, by and through counsel, and files this Complaint, pursuant to 42 U.S.C. § 1983, against the above-captioned Defendants for violations of Mr. Aliota's constitutional rights. In support thereof, Mr. Aliota states as follows.

1

**Nature of Action, Jurisdiction, and Venue**

1. This is a civil action under 42 U.S.C. § 1983 seeking damages against Defendants for committing acts, under color of law, with the intention and for the purpose of depriving Mr. Aliota of rights secured under the Constitution and laws of the United States, by using their position within and as a local government to sue Mr. Aliota, as a private citizen, for defamation, a patently frivolous claim, to chill and silence his protected speech.

2. The case arises under the United States Constitution and 42 U.S.C. §§ 1983 and 1988, as amended.

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4. Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5. The relief sought is authorized under, but not limited to, 42 U.S.C. §§ 1983 and 1988.

6. This Court is an appropriate venue pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because the Defendants are all located and/or reside in this Western District of Pennsylvania and much of Defendants' actionable conduct occurred in this District.

**Parties**

7. Mr. Aliota is a resident of Erie County, Pennsylvania.

8. Mr. Aliota is a resident and taxpayer within Defendant Millcreek Township School District ("Defendant MTSD").

9. From December 1, 2015 to December 1, 2019, Mr. Aliota served as an elected School Board Director for Defendant MTSD.

10. Defendant MTSD is a municipal entity, school district in Erie County, Pennsylvania.

11. Millcreek Township School District Board of Directors (the "Board") is the governing body for Defendant MTSD.

12. The Board is a sub-entity of Defendant MTSD.

13. The Defendant individual Board directors Defendant Meredith Bollheimer, Defendant Christopher Busko, Defendant John DiPlacido, Defendant Donnie Hosford, Defendant Janine McClintic, Defendant John Pitzer, Defendant Donna Reese, and Defendant Karen Morahan were Board Directors (collectively, "Initial Board Directors") at all relevant times when the unlawful conduct occurred.

14. The Defendant individual Board directors Defendant Christopher Busko, Defendant John DiPlacido, Defendant Janine McClintic, Defendant Gary Winschel, Defendant Lisa Cappabianca, Defendant Jason Dean, Defendant J. Michael Lindner, Defendant Shirley Winschel, Defendant Rick Lansberry, Defendant Janis Filbeck, Defendant Sallie Newsham, and Defendant Kim Lupichuk were Board Directors (collectively, "Subsequent Board Directors") who later approved the subsequent expenditures (the Initial Board Directors and the Subsequent Board Directors collectively, "Defendant Board Directors").

15. Defendant Board Directors are sued for damages in their individual capacity.

16. At all times relevant, Defendants acted under color of law.

**Facts**

17. In 2015, Mr. Aliota was duly elected to serve as a Board Director.

18. During his tenure, Mr. Aliota requested that he be supplied with documentation concerning activities of Defendant MTSD under "Right-to-Know" laws.

19. On June 29, 2017, Mr. Aliota filed a lawsuit against the Board and Superintendent William Hall ("Superintendent Hall") in the Court of Common Pleas of Erie County, Pennsylvania ("Aliota Lawsuit"). *See* June 29, 2017 Amended Complaint attached hereto as Exhibit A.

20. At the time that the Aliota Lawsuit was filed, the Board was comprised of the Initial Board Directors and Michael Kobylka, Former Board President.

21. The Aliota Lawsuit alleged that the Board improperly denied Mr. Aliota access to, *inter alia*, invoices, records, and other documents that Mr. Aliota was entitled to as a matter of law as an elected School Board Director.

22. Through the Aliota Lawsuit, Mr. Aliota sought a writ of mandamus, a preliminary injunction, and a permanent injunction.

23. In response, the Board and Superintendent Hall filed an answer and counterclaims against Mr. Aliota. *See* Answer and Counterclaims attached hereto as Exhibit B.

24. The counterclaims were against Mr. Aliota in his individual capacity.

25. Two of the counterclaims asserted against Mr. Aliota were for defamation.

26. The first defamation claim was asserted on behalf of past and present directors of the Board.

27. The second defamation claim was asserted on behalf of Superintendent Hall.

28. The Board and Superintendent Hall were represented by the same counsel in the lawsuit.

29. The Board's counsel also represents Defendant MTSD.

30. Defendant MTSD supplied counsel to the Board and Superintendent Hall.

31. Upon information and belief, the Initial Board Directors approved the counterclaims and funding of the same against Mr. Aliota.

32. Upon information and belief, the Subsequent Board Directors approved the continued funding of the counterclaims against Mr. Aliota.

33. Upon information and belief, Defendant MTSD funded the legal fees and litigation costs and approved of the counterclaims filed against Mr. Aliota.

34. Upon information and belief, counsel for the Board and Superintendent Hall was compensated, in part, for prosecuting the counterclaims against Mr. Aliota.

35. Upon information and belief, counsel for the Board and Superintendent Hall did not segregate legal fees to differentiate time spent on the lawsuit.

36. Thus, Defendant MTSD funded not only the Board's counterclaims against Mr. Aliota but Superintendent Hall's claims, as well.

37. Extensive discovery occurred during the lawsuit, which related almost entirely to the Board and Superintendent Hall's counterclaims.

38. On March 19, 2020, Mr. Aliota filed an Amended Complaint for declaratory judgment and permanent injunction against the Board and Superintendent Hall in a separate docket ("Declaratory Judgment Lawsuit"). *See* Amended Complaint attached hereto as Exhibit C.

39. Through the Declaratory Judgment Lawsuit, Mr. Aliota argued that the Defendant MTSD was prohibited from using taxpayer funding to pay the legal fees of the Board and Superintendent Hall and using the same funding to adjudicate the counterclaims.

40. In September 2021, Mr. Aliota filed a motion for summary judgment, requesting judgment as a matter of law as to the counterclaims for defamation.

41. Mr. Aliota argued that it was unconstitutional for the Board, a government entity, to file and maintain a defamation lawsuit in its own right against Mr. Aliota, a private citizen, pursuant to *New York Times v. Sullivan*, 376 U.S. 254 (1964).

42. *New York Times v. Sullivan* is a well-known, landmark decision of the Supreme Court of the United States.

43. Further, because the Board as a government entity may never maintain an action against an individual for defamation, it must not fund the prosecution by Superintendent Hall.

44. In its Opinion dated January 17, 2023, the court rejected the Board's and Superintendent Hall's arguments defending the counterclaims, and it granted summary judgment in favor of Mr. Aliota. *See* Opinion attached hereto as Exhibit D.

45. The court concluded "as a matter of law that the Board, by reason of its nature as a governmental entity, cannot maintain an action for defamation in its own right. As the United States Supreme Court recognized in *New York Times v. Sullivan*, 376 U.S. 254 (1964), 'no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on the government have any place in the American system of jurisprudence.' *New York Times v. Sullivan*, *supra* at 291-292."

46. Importantly, the court recognized that the Board and Superintendent Hall's defense of asserting the counterclaims as a "tool of last resort to convince Aliota to refrain from further alleged defamation" was "exactly the silence on free speech prohibited by *Sullivan*."

47. Thus, the court concluded that the Board (through Defendant MTSD) could not bring and fund the counterclaim on its behalf, nor could it fund Superintendent Hall's counterclaim.

48. For approximately three years and two months, Mr. Aliota was forced to defend counterclaims that were, according to the court, prohibited by the Constitution of the United States.

49. Mr. Aliota was forced to endure substantial legal fees and costs in defending the counterclaims.

50. The filing and prosecution of counterclaims was solely directed by the named Defendants under color of law for the purpose of silencing Mr. Aliota.

51. Defendants used the counterclaims to retaliate against Mr. Aliota for exercising his speech rights under the Constitution of the United States.

52. The unlawful and ultra vires actions of the Defendants, under color of law, have caused Mr. Aliota to suffer significant economic damages, including but not limited to attorney fees, litigation expenses, and other adverse financial impacts.

53. At various times throughout the Aliota Lawsuit, Mr. Aliota and his counsel inquired as to the legal basis for the Board to maintain a lawsuit for defamation against him.

54. These inquiries were made to the Board and to its various members.

55. It is believed and therefore averred that the Board and the Initial Board Directors knew that there was no legal basis to sue Mr. Aliota for defamation when they filed the counterclaims.

56. In the alternative, it is believed and therefore averred that the Board and the Defendant Board Directors knew that there was no legal basis to sue Mr. Aliota for defamation after he first inquired as to its legality.

57. In the alternative, it is believed and therefore averred that the Board and the Defendant Board Directors knew that there was no legal basis to sue Mr. Aliota for defamation after he filed the Declaratory Judgment Lawsuit.

### **Count I – Section 1983 – Violation of First Amendment Rights**

58. The above allegations are incorporated by reference as if realleged herein.

59. Section 1983 provides, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or

causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

60. The Fourteenth Amendment to the United States Constitution provides, "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."

61. "The right to substantive due process conferred by the Fourteenth Amendment includes the right to be free from state and local government interference with certain constitutionally recognized fundamental rights." *Phillips v. Borough of Keyport*, 107 F.3d 164, 179 (3d Cir. 1997) (citations omitted).

62. The Fourteenth Amendment's right to substantive due process "incorporates specific guarantees set out in the Bill of Rights, including the right to freedom of speech and of the press protected by the First Amendment" to the states. *Id.* at 184 n. 1.

63. The First Amendment to the United States Constitution provides, "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

64. Defendants acted under color of state law and subjected Mr. Aliota to the deprivation of his rights under the First and Fourteenth Amendments to the United States Constitution.

65. Mr. Aliota had the right under the First Amendment of the Constitution to request documentation and/or criticize the Defendant MTSD and its entity, the Board.

66. Through its counterclaims, the Board, a government entity, attempted to silence Mr. Aliota, violate his free speech rights, and have a chilling effect on free speech.

67. Through the counterclaims, the Defendant Board Directors who supported and advanced the prosecution of the counterclaims through suit and approval of expenditures attempted to silence Mr. Aliota, violate his free speech rights, and have a chilling effect on free speech.

68. The Defendant MTSD, the Board, and the Defendant Board Directors used public resources to pursue and fund the counterclaims against Mr. Aliota.

69. The Defendant MTSD, the Board, and the Defendant Board Directors used public resources to pursue and fund Superintendent Hall's counterclaim.

70. The Board is and was at all times a sub-entity of the Defendant MTSD.

71. As a governmental entity, Defendant MTSD may not bring or fund a lawsuit against a citizen to silence the citizen's speech.

72. Mr. Aliota's rights were clearly established at the time Defendants' violations of which a reasonable person would have known.

73. Upon information and belief, Defendants knowingly and intentionally engaged in unlawful and ultra vires actions for the sole purpose of depriving and/or delaying Mr. Aliota's constitutional, statutory, regulatory, and property rights under the United States Constitution, the Pennsylvania Constitution, and federal and state law.

74. Defendant Board Directors' knowing and intentional conduct, under color of law, to deprive Mr. Aliota of his rights under the United States Constitution and federal law, warrants the imposition of punitive damages.

75. Mr. Aliota suffered damages through the time, legal fees, and legal costs he was forced to endure defending Defendants' unlawful actions.

## Count II – Section 1983 – Malicious Use of Process

76. The above allegations are incorporated by reference as if realleged herein.

77. The Fourteenth Amendment to the United States Constitution protects procedural and substantive due process rights.

78. Mr. Aliota's rights were clearly established at the time of Defendant's violations of which a reasonable person would have known.

79. At the time that Defendants initiated the counterclaims, through civil action, against Mr. Aliota, *New York Times v. Sullivan*, supra, had been decided for fifty-three years, and was already well-settled law.

80. However, Defendants willfully chose to initiate the counterclaims against Mr. Aliota in court.

81. Defendants initiated the counterclaims for the purpose of preventing Mr. Aliota from exercising his constitutional speech rights.

82. In granting summary judgment for Mr. Aliota, the court recognized that the use of the counterclaims as a "tool of last resort to convince Aliota to refrain from further alleged defamation", was unconstitutional.

83. Defendants' motives for initiating the counterclaims are clearly stated in previous pleadings and depositions throughout the Aliota Lawsuit, demonstrating their motivation to impair Mr. Aliota's speech and participation in public matters.

84. Thus, Mr. Aliota was deprived of his liberty to fully engage in his constitutional right to freedom of speech and was deterred from engaging in the same.

85. Defendant Board of Directors' knowing and intentional conduct, under color of law, to deprive Mr. Aliota of his rights under the United States Constitution and federal law, warrants the imposition of punitive damages.

86. Mr. Aliota suffered damages through the time, legal fees, and legal costs he was forced to endure defending Defendants' unlawful actions.

## **Count III – Section 1983 – Abuse of Process**

87. The above allegations are incorporated by reference as if realleged herein.

88. The Fourteenth Amendment of the United States Constitution protects procedural and substantive due process rights.

89. Defendants approved, funded, and/or initiated the counterclaims against Mr. Aliota.

90. As a result, legal proceedings ensued regarding the counterclaims.

91. Defendants acted, according to admissions during the Aliota Lawsuit, to silence Mr. Aliota's speech.

92. Defendants, a governmental body and officials, used the counterclaims as a "tool" against Mr. Aliota, a private citizen, according to pleadings in the Aliota Lawsuit.

93. Mr. Aliota's speech rights were clearly protected pursuant to well-established law.

94. Defendants' conduct was clearly prohibited pursuant to well-established law.

95. Defendant Board Directors' knowing and intentional conduct, under color of law, to deprive Mr. Aliota of his rights under the United States Constitution and federal law, warrants the imposition of punitive damages.

96. Mr. Aliota suffered damages through the time, legal fees, and legal costs he was forced to endure defending Defendants' unlawful actions.

### **Count IV – State/Common Law – Tort of Negligence**

97. The above allegations are incorporated by reference as if realleged herein.

98. Defendants owed a duty to Mr. Aliota not to violate federal and/or state statutes and other regulations in their dealings with Mr. Aliota.

99. Defendants' conduct as set forth herein constitutes a breach of duties owed to Mr. Aliota.

100. As a proximate cause of Defendants' conduct, Mr. Aliota has suffered damages through the time, legal fees, and legal costs he was forced to endure defending Defendants' unlawful actions.

101. Defendants' actions were willful, wanton, reckless, and/or otherwise sufficiently reprehensible to justify an award of punitive damages, where appropriate.

### **Count VI – State/Common Law – Abuse of Process**

102. The above allegations are incorporated by reference as if realleged herein.

103. Defendants approved, funded, and/or initiated the counterclaims against Mr. Aliota.

104. As a result, legal proceedings ensued regarding the counterclaims.

105. Defendants acted, according to admissions made during the Aliota Lawsuit, to silence Mr. Aliota's protected speech.

106. Mr. Aliota's speech rights were clearly protected pursuant to well-established law.

107. Mr. Aliota suffered damages through the time, legal fees, and legal costs he was forced to endure defending Defendants' unlawful actions.

108. Defendants' actions justify an award of punitive damages, where appropriate.

WHEREFORE, Plaintiff, Louis J. Aliota, an individual, requests judgment against Defendants as follows:

A. For appropriate compensatory damages, including but not limited to Mr. Aliota's economic damages, attorney fees, litigation expenses, and other costs associated with his defense of Defendants' counterclaims.

B. For appropriate punitive damages.

C. For an award of reasonable attorney fees, litigation expenses, and court costs expended as to such Defendants pursuant to 42 U.S.C. §§ 1983, 1988.

D. For such other and further relief to which Mr. Aliota may show himself justly entitled.

**PLAINTIFF REQUESTS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated: June 21, 2023

/s/ Brian J. Pulito
Brian J. Pulito, Esq.
Attorney No. 203952
STEPTOE & JOHNSON PLLC
201 Chestnut Street, Suite 200
Meadville, PA 16335
Tel: (814) 333-4900
brian.pulito@steptoe-johnson.com