IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOUIS J. ALIOTA,<br>　　　　Plaintiff | C.A. No. 23-188 Erie |
| v | District Judge Susan Paradise Baxter |
| MILLCREEK TOWNSHIP SCHOOL<br>DISTRICT, et al.,<br>　　　　Defendants | |

## MEMORANDUM OPINION

### I.　INTRODUCTION

#### A.　Relevant Procedural History

Plaintiff Louis J. Aliota, an adult resident of Erie County, Pennsylvania, initiated this civil rights action on June 21, 2023, by filing a complaint pursuant to 42 U..S.C. § 1983, against Defendant Millcreek Township School District ("MTSD") and the following individual Defendants, all of whom are past and/or present members of MTSD's Board of Directors: Meredith Bollheimer ("Bollheimer"), Christopher Busko ("Busko"), John DiPlacido ("DiPlacido"), Donnie Hosford ("Hosford"), Janine McClintic ("McClintic"), John Pitzer ("Pitzer"), Donna Reese ("Reese"), Karen Morahan ("Morahan"), Gary Winschel ("G. Winschel"), Lisa Cappabianca ("Cappabianca"), Jason Dean ("Dean"), J. Michael Lindner ("Lindner"), Shirley Winschel ("S. Winschel"), Rick Lansberry ("Lansberry"), Janis Filbeck ("Filbeck"), Sallie Newsham ("Newsham"), and Kim Lupichuk ("Lupichuk").

All of Plaintiff's claims in this case arise from counterclaims for defamation that were asserted against Plaintiff by MTSD's Board of Directors ("Board") in response to a lawsuit

1

Plaintiff filed against the Board on June 29, 2017 in the Court of Common Pleas of Erie County, Pennsylvania. Plaintiff alleges five causes of action against all Defendants stemming from those counterclaims:

> Count I - violation of Plaintiff's First Amendment right to free speech
> Count II - malicious use of process under 42 U.S.C. § 1983
> Count III – abuse of process under 42 U.S.C. § 1983
> Count IV – negligence under Pennsylvania state law
> Count VI – abuse of process under Pennsylvania state law[1]

On August 22, 2023, Defendants filed a motion to dismiss Plaintiff's complaint, arguing that: (1) all claims other than Count II are barred by the applicable statute of limitations; (2) all claims other than Count IV fail to state causes of action upon which relief may be granted; (3) Defendants are immune from liability on Plaintiff's state law claims, under the Pennsylvania Political Subdivision Tort Claims Act; (4) and the individual Defendants are entitled to qualified immunity on Counts I, II, and III. [ECF No. 17]. Plaintiff subsequently filed a response in opposition to Defendants' motion [ECF No. 23], and Defendants have since filed a reply [ECF No. 26]. This matter is now ripe for consideration.

### B.  Relevant Factual History[2]

In 2015, Plaintiff was elected to serve as a member of MTSD's Board (ECF No. 1, at ¶ 17). During his tenure as a member of the Board, Plaintiff requested that he be supplied with information concerning MTSD's activities under "Right-to-Know" laws (Id. at ¶ 18).

---

[1] Count V is erroneously labeled "Count VI" in the complaint and will be referred to as such for the sake of consistency.

[2] The factual history set forth herein has been gleaned from the allegations of Plaintiff's complaint, which are accepted as true for purposes of considering Defendants' motion, to the extent such allegations are well-pleaded.

2

On June 19, 2017, Plaintiff filed a lawsuit against the Board and Superintendent William Hall ("Hall") in the Court of Common Pleas of Erie County, Pennsylvania ("Aliota Action"), alleging that the Board improperly denied him access to certain records of MTSD that he was entitled to as an elected Board member (Id. at ¶¶ 19, 21). The lawsuit sought a writ of mandamus, a preliminary injunction, and a permanent injunction (Id. at ¶ 22). In response to the lawsuit, the Board and Hall filed an answer and counterclaims against Plaintiff, in his individual capacity, on November 29, 2017 (Id. at ¶¶ 23-24). Two of the counterclaims were for defamation; the first on behalf of the Board and the second on behalf of Hall (Id. at ¶¶ 25-27). The Board and Hall were represented by the same legal counsel, who also represents Defendant MTSD (Id. at ¶¶ 28-29). Plaintiff alleges that the individual Defendants approved both the counterclaims and the funding of the same, and Defendant MTSD also approved the counterclaims and funded the legal fees and litigation costs for both the Board and Hall (Id. at ¶¶ 31-33, 36).

On March 19, 2020, Plaintiff filed an Amended Complaint for declaratory judgment and permanent injunction against the Board and Hall in a separate lawsuit ("Declaratory Judgment Action") alleging that Defendant MTSD was prohibited from using taxpayer funds to pay the legal fees of the Board and Hall and using the same funds to adjudicate the counterclaims (Id. at ¶¶ 38-39).

In September 2021, Plaintiff filed a motion for summary judgment as to the counterclaims for defamation, arguing that it was unconstitutional for the Board, as a government entity, to file and maintain a lawsuit in its own right against Plaintiff (Id. at ¶¶ 40-

41). On January 17, 2023, the court granted summary judgment in favor of Plaintiff, concluding that the Board (through Defendant MTSD) could not bring and fund the counterclaim on its behalf, nor could it fund Hall's counterclaim (Id. at ¶¶ 44, 47).

## II. DISCUSSION

### A. Statute of Limitations – Section 1983 Claims

Count I (First Amendment retaliation) and Count III (Abuse of Process) of Plaintiff's complaint are both brought under 42 U.S.C. § 1983. "The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose." Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). Here, all of Plaintiff's claims arose in Pennsylvania. "The statute of limitations for a § 1983 claim arising in Pennsylvania is two years." Id., citing 42 Pa. C.S. § 5524(2). Thus, Plaintiff's Section 1983 claims must have accrued on or before June 21, 2021 (within two years of the date this action was filed).

When a claim accrues for purposes of the statute of limitations is governed by federal law. Id. "Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which [his] action is based." Id. (internal citations and quotation marks omitted). Stated another way, a § 1983 claim accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Wallace v. Kato, 549 U.S. 384, 388 (2007) (citations and internal quotation marks omitted). Generally, a cause of action accrues from the "time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." Kach, 589 F.3d at 634, citing United States v. Kubrick, 444 U.S. 111, 120 (1979).

### 1. Count I – First Amendment Retaliation

Defendants assert that Plaintiff's cause of action for retaliation accrued on November 29, 2017, being the date on which the counterclaims for defamation were filed in the Aliota Action. Thus, according to Defendants, Plaintiff's claim accrued over five years before the complaint in this case was filed and is, therefore, barred by the two-year statute of limitations.

In response, Plaintiff counters that his retaliation claim is analogous to a claim for malicious prosecution and, thus, did not accrue until the counterclaims against him were dismissed on January 17, 2023. In support of this argument, Plaintiff cites the unreported case of Haagensen v. Pa. State Police, 2009 WL 790355, at *4 (W.D. Pa. Mar. 25, 2009), in which the court determined that a First Amendment retaliation claim based on a criminal prosecution does not accrue until dismissal of the retaliatory charges (citing Hartman v. Moore, 547 U.S. 250 (2006)). However, both Haagensen and Hartman involved the government's initiation of criminal proceedings against the plaintiff in retaliation for the plaintiff's exercise of his or her free speech rights. Such is not the case here and, thus, Plaintiff's attempt to have his retaliation claim treated as one for malicious prosecution is unfounded.

Alternatively, Plaintiff argues that the discovery rule should apply to toll the running of the statute of limitations until some yet-to-be determined date because, when the counterclaims were filed, he "neither knew nor had reason to know that those counterclaims were motivated by retaliation." (ECF No. 23, at p. 22). However, Plaintiff is not required to plead or establish Defendants' motivation to state a *prima facie* case of retaliation. He is merely required to allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person or

ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006) (addressing retaliation for filing a lawsuit). Plaintiff knew, or should have known, all of the facts necessary to state a *prima facie* claim of retaliation at the time the counterclaims at issue were filed. See Brawner v. Educ. Mgmt. Corp., 513 Fed. Appx. 148, 151 (3d Cir. 2013) ("knowledge of every fact necessary to prevail on the claim is not required to ... trigger the accrual period"); Danysh v. Eli Lilly and Co., 461 Fed. Appx. 75, 77 (3d Cir. 2012) (limitations period is "not postponed until the injured party knows every fact necessary to bring his action").

Plaintiff argues further that the "continuing violation doctrine" should apply to extend the running of the limitations period because Defendants "continued to maintain and defend their counterclaims against [Plaintiff] until they were dismissed, which did not take place until January 17, 2023." (ECF No. 23, at p. 23). This argument is unavailing. "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." Cowell v. Palmer Twp., 263 F.3d 286, 293 (3d Cir. 2001) (internal quotation marks omitted).[3] Plaintiff's alleged injuries here all stem from Defendants' original act of filing the counterclaims at issue. Thus, the continuing violation doctrine does not apply.

For the foregoing reasons, therefore, the Court concludes that Plaintiff's First Amendment retaliation claim is barred by the applicable statute of limitations. Count I of the

---

[3] The court noted further that the continuing violation doctrine is typically applied in employment discrimination cases. Cowell, 263 F.3d at 292 (citation omitted).

6

complaint will be dismissed, accordingly.

### 2.     Count III – Abuse of Process

The statute of limitations for an abuse of process claim is triggered when "the process is used for an improper purpose." Evans v. Durham Life Ins. Co., 2001 WL 770803, at *2 (E.D. Pa. Jul. 9, 2001), citing Williams v. City of Philadelphia, 1997 WL 598013, at *3 (E.D. Pa. Sept. 17, 1997); Harvey v. Pincus, 549 F.Supp. 332, 342 (E.D. Pa. 1982), aff'd 716 F.2d 890 (3d Cir.), cert. denied, 464 U.S. 918 (1983). Here, Plaintiff alleges that Defendants "approved, funded, and/or initiated the counterclaims" as a "tool" against him "to silence [his] speech." (ECF No. 1, at ¶¶ 89-92). In addition, Plaintiff alleges that Defendants "knew that there was no legal basis to sue [Plaintiff] for defamation when they filed the counterclaims." (Id. at ¶ 55).

Thus, it is apparent from Plaintiff's allegations that the process at issue was allegedly "used for an improper purpose" at the time it was initiated by Defendants. This occurred upon the filing of the counterclaims on November 29, 2017, which was more than five years before this lawsuit was filed by Plaintiff. Accordingly, Plaintiff's Section 1983 abuse of process claim is barred by the applicable two-year statute of limitations and will be dismissed.

### B.     Statute of Limitations – State Law Claims

As with Plaintiff's Section 1983 claims, the statute of limitations for the common law claims of negligence and abuse of process in Pennsylvania is two years. 42 Pa. C.S. §§ 5524(1), (2).

### 1.     Count IV - Negligence

Plaintiff vaguely claims that Defendants owed him a duty "not to violate federal and/or state statutes and other regulations in their dealings with him" and that their alleged conduct

breached those duties. (ECF No. 1, at ¶¶ 98-99). This "alleged conduct" includes Plaintiff's allegations that Defendants' counterclaims were used "to retaliate against [Plaintiff] for exercising his speech rights under the Constitution of the United States," and that "the Defendant Board Directors who supported and advanced the prosecution of the counterclaims through suit and approval of expenditures attempted to silence [Plaintiff], violate his free speech rights, and have a chilling effect on free speech" (Id. at ¶¶ 51, 73). It is apparent from these and similar allegations that Defendants' "breach" of their duties primarily occurred at or around the initiation of their counterclaims of defamation against Plaintiff on November 29, 2017, which is well beyond the reach of the applicable two-year statute of limitations. Thus, Plaintiff's negligence claim will be dismissed as untimely.

### 2.     Count VI – Common Law Abuse of Process

In Pennsylvania, "'[t]o establish a claim for abuse of process, it must be shown that the defendant (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.'" Langman v. Keystone Nazareth Bank &Trust Co., 502 Fed. Appx. 220, 224 (3d Cir. 2012), quoting Lerner v. Lerner, 954 A.2d 1229, 1238 (Pa. Super. 2008) (citation and internal quotation marks omitted). "'[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises.'" Langman, 502 Fed. Appx. at 224, quoting Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983) (citation omitted).

Here, it appears from Plaintiff's allegations that his common law abuse of process claim accrued upon Defendants' filing of their counterclaims in November 2017, as Plaintiff had sufficient facts necessary to establish all three elements of the claim at such time. Accordingly,

Defendants' motion to dismiss such claim as untimely will be granted.

### C.      Count II – Malicious Use of Process

The final claim left to consider is Plaintiff's malicious use of process claim under Section 1983.[4] Defendants seek dismissal of this claim, arguing that Plaintiff has failed to state a claim upon which relief may be granted and, alternatively, that the individual Defendants are entitled to qualified immunity from such claim. Each of these arguments will be considered in turn.

#### 1.      Failure to State a Claim

Defendants' argument that Plaintiff has failed to state a claim upon which relief may be granted is based on their application of Pennsylvania's statute, 42 Pa. C.S. § 8351, which defines the elements of a common law tort claim of malicious use of process. Defendants apply these elements in reliance upon the Third Circuit Court's pronouncement in McArdle v. Tronetti, 961 F.2d 1083 (3d Cir. 1992) that "claims of malicious prosecution brought under Section 1983 must include the elements of the common law tort as it has developed." Id. at 1088, citing Rose v. Bartle, 871 F.2d 331, 349 (3d Cir. 1989); Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988).

However, Plaintiff correctly notes that the Third Circuit has since recognized that the Supreme Court's decision in Albright v. Oliver, 510 U.S. 266 (1994) "'casts doubt' on prior circuit precedent adopting common law malicious prosecution as the test in a § 1983 action." (ECF No. 23, at p. 11, quoting Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 792 (3d Cir. 2000) (citation omitted)). Yet, after making this correct observation, Plaintiff inexplicably

---

[4] Malicious use of process is the term generally used when the underlying prosecution is civil in nature while malicious prosecution is the term used when the underlying prosecution is criminal in nature. See Harvey v. Pincus, 549 F. Supp. 332, 340 (E.D. Pa. 1982), aff'd 716 F.2d 890 (3d Cir. 1983) (noting that claims for "malicious

proceeds to cite post-Albright precedent setting forth the test for stating a claim for retaliatory prosecution, rather than malicious use of process.

Needless to say, the parties' attempts to define the parameters of a cognizable Section 1983 claim of malicious use of process is murky at best. But to be fair, the courts have fared little better in establishing a bright line test for stating a Section 1983 malicious use of process claim after Albright.

Nonetheless, the Third Circuit has generally recognized that "malicious use [of process] has to do with the wrongful initiation of civil process," U.S. Express Liness Ltd. V. Higgins, 281 F.3d 383, 394 (3d Cir. 2002) (citation omitted), and that it "must be based on a provision of the Bill of Rights providing 'an explicit textual source of constitutional protection'" rather than "'the mere generalized notion of substantive due process.'" Merkle, 211 F.3d at 788, quoting Albright, 510 U.S. at 272-73 (citations omitted). In addition, the Middle District Court has helpfully noted that:

> The reasoning of *Albright* with respect to § 1983 malicious prosecution claims … would appear to apply with equal force to § 1983 suits for malicious use of civil process. That is, a plaintiff may not bring a civil rights action based solely on the assertion that a government officer had acted without probable cause and maliciously in commencing a proceeding against the plaintiff. Plaintiff, instead, must allege that the proceeding in question caused the interference with an explicit right, such as the Fourth Amendment right to be free from an unreasonable seizure of the person or of property.

Siegmond v. Fedor, 2004 WL 1490430, at * 5 n.5 (M.D. Pa. June 29, 2004) (internal citation omitted).

---

prosecution, ... when founded on civil prosecutions, are usually described as malicious use of civil process," quoting Publix Drug Co. v. Breyer, 32 A.2d 413, 415 (Pa. 1943)).

Here, Plaintiff has alleged that Defendants initiated the defamation counterclaims at issue "for the purpose of preventing [Plaintiff] from exercising his constitutional speech rights" under the First Amendment, and that he was, thus, "deprived of his liberty to fully engage in his constitutional right to freedom of speech and was deterred from engaging in the same." (ECF No. 1, at ¶¶ 81, 84). Plaintiff has, therefore, alleged that Defendants' use of process was wrongfully initiated with the specific intent and effect of causing interference with his explicit First Amendment right to freedom of speech. Such allegations are sufficient to maintain a claim of malicious use of process at the pleading stage.

### 2.  Qualified Immunity

Nonetheless, Defendants contend that Plaintiff's malicious use of process claim should be dismissed against the individual Defendants because they are entitled to qualified immunity.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (internal citations omitted). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law." Id., quoting Malley v Briggs, 475 U.S. 335, 341 (1986). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

While courts should resolve questions of qualified immunity at the earliest possible stage of litigation, a finding of qualified immunity "'will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.'" Thomas v. Indep. Twp., 463 F.3d

285, 291 (3d Cir. 2006), quoting Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001); see also Newland v. Reehorst, 328 Fed. Appx. 788, 791 n.3 (3d Cir. 2009) ("We caution, however, that it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."). If the complaint fails to state a claim of a violation of clearly established law on its face, "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Thomas, 463 F.3d at 291, citing Mitchell, 472 U.S. at 526. The Court emphasizes, however, that at the motion to dismiss stage, "the defendant has the burden of pleading and proving qualified immunity." Mitros v. Cooke, 170 F.Supp.2d 505, 507 (E.D. Pa. 2001), citing Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982); see also Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010) ("the burden of establishing entitlement to qualified immunity is on [the defendant]").

Here, the individual Defendants claim that they are entitled to qualified immunity because the "filing of a counterclaim for defamation did not violate Plaintiff's clearly established constitutional rights" (ECF No. 18, at p. 13). In particular, Defendants assert that "there is no case law that discusses or defines whether a governmental entity is able to fund the pursuit of a private defamation tort claim by an individual public official against a private citizen where there is actual malice, and the counterclaim is in response to other claims brought against the entity by the private citizen." (Id. at p. 14). In response, Plaintiff disputes Defendants' characterization of both the question at issue and the nature of Plaintiff's claim against the individual Defendants. (ECF No. 23, at 18). According to Plaintiff, "[t]his case is about whether the Defendants counterclaimed against [Plaintiff] in retaliation for his questioning and suing them." (Id.). The resolution of this dispute involves an in-depth analysis of fact issues that require further

development beyond the pleading stage. Thus, Defendants have not met their burden of establishing entitlement to qualified immunity at this early stage, because the immunity of the individual Defendants is not established on the face of the complaint.

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Section 1983 malicious use of process claim will be denied, without prejudice to Defendants' right to reassert the individual Defendant's entitlement to qualified immunity, if warranted, after further facts are developed through discovery.

An appropriate Order follows.